UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION



FILED
CHARLOTTE, NC

JUL 2 4 2013

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:13CR204-MOC |
| | ) | |
| | ) | **BILL OF INDICTMENT** |
| v. | ) | |
| | ) | Violations: |
| (1) BOGGS PAVING, INC. | ) | |
| (2) CARL ANDREW BOGGS, III | ) | 18 U.S.C. § 371 (Conspiracy) |
| a/k/a Drew Boggs | ) | 18 U.S.C. § 1343 (Wire Fraud) |
| (3) KEVIN HICKS | ) | 18 U.S.C. § 1341 (Mail Fraud) |
| (4) GREG MILLER | ) | 18 U.S.C. § 1956(h) (Money |
| (5) GREG TUCKER | ) | Laundering Conspiracy) |
| (6) STYX CUTHBERTSON TRUCKING | ) | 18 U.S.C. § 1956 (Money |
| COMPANY, INC. | ) | Laundering) |
| (7) JOHN CUTHBERTSON | ) | |
| a/k/a Styx Cuthbertson | | |

---

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

## I. Introduction

1.    From at least 2003 through the date of this Indictment, BOGGS PAVING, INC. (BOGGS PAVING) fraudulently obtained tens of millions of dollars in construction contracts funded by the United States Department of Transportation (USDOT), the North Carolina Department of Transportation (NCDOT), and the South Carolina Department of Transportation (SCDOT) by fraudulently certifying that required payments had been made to STYX CUTHBERTSON TRUCKING COMPANY, INC. (STYX), a Disadvantaged Business Enterprise (DBE). In reality, the majority of the payments that STYX supposedly received were ultimately kept by BOGGS PAVING and its affiliates.

2.    To create the appearance that STYX had received payments and had performed DBE work, BOGGS PAVING, among other things, ran payments through a nominee bank account in STYX's name but funneled the funds back to BOGGS PAVING and its affiliates.

3.    As a result of its fraudulent and deceptive conduct, BOGGS PAVING obtained profits from lucrative NCDOT and SCDOT contracts that it was not entitled to receive and thereby unjustly enriched itself; deprived USDOT, NCDOT, and SCDOT of controlling how

1

their money should be spent; deprived legitimate DBEs of the profits from subcontracts that were designated for their benefit; and deprived other general contractors from obtaining the profits from lucrative NCDOT and SCDOT contracts.

## II. Department of Transportation Disadvantaged Business Enterprise Program

4.     The USDOT's DBE Program is intended to increase the participation of minority and disadvantaged business enterprises (DBEs) in federally funded public construction contracts.

5.     A DBE is a for-profit small business concern that is:

A.     At least 51 percent owned by persons who are both socially and economically disadvantaged.

B.     A "small business" whose management and daily business operations are controlled by the socially and economically disadvantaged owner.

C.     A business whose average annual gross receipts within the previous three years, did not exceed $22.41 million.

6.     To qualify for USDOT construction grants, a DBE program must, among other things: (1) establish goals for the percentage of a construction project's funds awarded to DBEs (DBE goals); and (2) require general contractors to make good faith efforts to meet the relevant DBE goals.

7.     NCDOT and SCDOT receive USDOT construction grants and have DBE programs. NCDOT and SCDOT require contractors bidding on these contracts, known as "prime contractors," to show that they can meet the contract specific DBE goals. A prime contractor that is not a DBE itself must certify that it will award a specified percentage of the contract value to eligible DBEs. Generally, the prime contractor that submits the lowest responsive bid and that also meets the specified DBE goals will be awarded the contract.

8.     NCDOT and SCDOT certify the eligibility of DBE firms and also establish contract specific DBE goals for each contract as a percentage of the total contract amount.

9.     Only DBEs that perform a "commercially useful function" count toward the attainment of a prime contractor's DBE goals. Under the relevant rules and regulations, a DBE trucking subcontractor performs a commercially useful function only where:

A.     The DBE is responsible for the management and supervision of the entire trucking operation for which it is responsible on a particular contract.

B.     There is no contrived arrangement for the purpose of meeting DBE goals.

C.     The DBE itself owns and operates at least one fully licensed, insured, and operational truck used on the contract.

2

D.     The rules expressly provide that a DBE does not perform a commercially useful function "if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of DBE participation."

### III.  North Carolina Department of Transportation Small Business Enterprises Program

10.     NCDOT also reserves certain contracts for Small Business Enterprises (SBE) to provide contract opportunities for small firms.  The bidding requirements for SBE contracts require that any firm seeking to bid on an SBE project be certified as a SBE.  In order to qualify as an SBE, a business must have income of less than $1.5 million.  Standard Provisions for SBE contracts require:

A.     The successful bidder on an SBE contract must obtain written approval for any subcontract work to be performed on the project.

B.     The successful bidder on an SBE contract must perform no less than 40% of the total dollar value of the original contract with his own organization.

### IV.  Entities and Individuals

11.     The Defendant BOGGS PAVING was incorporated in North Carolina in 1994 and was a road and highway construction contractor based out of Monroe, North Carolina, serving North Carolina, South Carolina, and parts of Georgia.  BOGGS PAVING was a certified general contractor for NCDOT and SCDOT and also performed work for local municipalities and regional airports in North Carolina and South Carolina.  BOGGS PAVING utilized P.O. Box 1609, Monroe, North Carolina ("the BOGGS P.O. Box") as its mailing address.  BOGGS PAVING was physically located at 1613 W. Roosevelt Boulevard, Monroe, North Carolina (the "BOGGS office address.")

12.     BOGGS PAVING had several affiliates (together, "BOGGS GROUP").  BOGGS PAVING and its management received consolidated financial statements for the BOGGS GROUP, which consolidated the financial statements for BOGGS PAVING and its affiliates. The affiliates included:

A.     BOGGS TRANSPORT, ·INC. (BOGGS TRANSPORT) was incorporated in North Carolina in 1997 and was the trucking affiliate of BOGGS PAVING.  BOGGS TRANSPORT owned dump trucks and hauled road construction materials for a fee.  BOGGS TRANSPORT utilized the BOGGS P.O. Box as its mailing address.  BOGGS TRANSPORT was physically located at 2318 Concord Highway, Monroe, North Carolina ("the BOGGS Truck Yard") which was the location of the truck yard.

B.     BOGGS MATERIALS, INC. (BOGGS MATERIALS) was incorporated in North Carolina in 1997 and was the asphalt plant affiliate of BOGGS PAVING.  BOGGS MATERIALS owned several asphalt plants in North Carolina and South Carolina and manufactured and sold road construction materials.  The principal office of BOGGS

3

MATERIALS was located at the BOGGS office address and the mailing address of BOGGS MATERIALS was the BOGGS P.O. Box.

C.     "Affiliate B" was incorporated in South Carolina in 2005 and was an affiliate of BOGGS PAVING and BOGGS MATERIALS located in Jefferson, South Carolina. Affiliate B provided rock, stone, and other aggregate to BOGGS PAVING and other entities for a fee.

D.     "Affiliate C" was incorporated in North Carolina in 2005 and was an affiliate of BOGGS PAVING and BOGGS MATERIALS that produced sand for BOGGS MATERIALS's asphalt plants and BOGGS PAVING's construction projects.

13.     The BOGGS GROUP entities were not DBEs with NCDOT or SCDOT, nor were they eligible to be so certified. The BOGGS GROUP entities were not SBEs with NCDOT, nor were they eligible to be so certified.

14.     The Defendant CARL ANDREW BOGGS, III (DREW BOGGS), also known as Drew Boggs, was the President and 50% owner of BOGGS PAVING as well as the President and Chief Executive Officer of BOGGS GROUP.  DREW BOGGS was the Vice President of BOGGS TRANSPORT. DREW BOGGS was at various times the President, Secretary, and Vice President of BOGGS MATERIALS, as well as a co-owner of BOGGS MATERIALS. DREW BOGGS was a manager of AFFILIATE C.

15.     The Defendant KEVIN HICKS (HICKS) was the Chief Financial Officer for BOGGS PAVING and BOGGS GROUP. HICKS reported to DREW BOGGS. HICKS supervised Accounts Payable, Accounts Receivable, Job Cost Accounting, Human Resources, and Information Technology for BOGGS PAVING.

16.     The Defendant GREG MILLER (MILLER) was Vice President, Secretary, Chief Estimator and Contract Administrator for BOGGS PAVING and had responsibility for bidding on federal construction projects in North Carolina and South Carolina. MILLER reported to DREW BOGGS.

17.     The Defendant GREG TUCKER (TUCKER) was a Project Manager, Estimator, and Vice President for BOGGS PAVING and was responsible for bidding on federal construction projects on behalf of BOGGS PAVING in North Carolina. TUCKER reported to MILLER and DREW BOGGS.

18.     The Defendant STYX was a road construction hauler based in Monroe, North Carolina that was incorporated in North Carolina in 1999. The office and mailing address of STYX was in Wingate, North Carolina. STYX owned four to six trucks and hauled dirt and other materials for a fee. STYX stored its trucks at the BOGGS Truck Yard. During the relevant time period, STYX worked almost exclusively for BOGGS PAVING.

19.     STYX was certified as a DBE with NCDOT and SCDOT. STYX was an SBE with NCDOT.

20.     The Defendant JOHN CUTHBERTSON (CUTHBERTSON), also known as Styx Cuthbertson, was the President and sole owner of STYX and was a truck driver for STYX.

## V. The Fraud Scheme

21.     Defendants BOGGS PAVING, DREW BOGGS, HICKS, MILLER, TUCKER, and CUTHBERTSON used STYX as a "pass through" entity to obtain the appearance of the required DBE participation and required payments to a DBE entity when, in reality, the majority of the funds that were represented as having been paid to STYX were actually paid to BOGGS GROUP or other non-DBE firms and the majority of the work that was represented as having been done by STYX was actually done by the BOGGS GROUP or another non-DBE firm.

22.     To create this illusion, the Defendants and their co-conspirators used a nominee account to make it look like STYX was getting paid for the work they pretended he did. By 2002, CUTHBERTSON had given BOGGS PAVING control over a bank account in the name of STYX at BB&T, Account xxxxx7761 ("STYX Nominee Account"), with an address of P.O. Box 53 in Monroe, North Carolina. The address on the bank account was then changed to the BOGGS P.O. Box, and the statements were sent to the attention of KEVIN HICKS, the Chief Financial Officer of BOGGS PAVING.

23.     The checkbook for the STYX Nominee Account was maintained and controlled at the office of BOGGS PAVING. K.L., an employee of BOGGS PAVING, was responsible for preparing the illusory deposits for the STYX Nominee Account and also was responsible for writing checks out of STYX Nominee Account back to BOGGS GROUP.

24.     STYX also had a real account at First Citizens Bank (the "Real STYX Account") that CUTHBERTSON actually used and controlled.

25.     Thus, every two weeks, BOGGS PAVING wrote two checks to STYX; one check was deposited into the STYX Nominee Account and the other, for work that STYX had actually done less his expenses, was handed to CUTHBERTSON and deposited into the Real STYX Account.

A.     Funds from BOGGS PAVING were deposited into the STYX Nominee Account to give the appearance that STYX had been paid for work done on various construction projects.

B.     In truth and fact, the funds were just run through the STYX Nominee Account and thus were never under the control of STYX.

C.     Once a deposit was made into the STYX Nominee Account, K.L. would immediately cut checks from the STYX Nominee Account to the entity that had actually done the work, such as BOGGS TRANSPORT or other BOGGS GROUP entities.

D.     In return, STYX received a kickback for allowing his name and DBE status to be used by BOGGS PAVING.

5

26.     The checks for STYX's kickbacks and for actual work performed by STYX were generally deposited into the Real STYX Account.

27.     Between January 2003 and December 2012, over $7 million in checks from BOGGS PAVING were deposited into the STYX Nominee Account. During this same time period, payments of more than $6.3 million were funneled back from the nominee account to BOGGS GROUP entities, including BOGGS TRANSPORT, BOGGS PAVING, BOGGS MATERIALS, and AFFILIATE B.  The remaining funds went to other sub-contractors whose payments had been "run through" STYX or went to STYX as kickbacks.

28.     Defendants BOGGS PAVING, DREW BOGGS, HICKS, MILLER, TUCKER, STYX, and CUTHBERTSON fraudulently obtained federally funded contracts by creating the illusion that STYX would and did receive the required percentage of the dollar amount of the contract and that STYX would and did perform work on the contracts, when in truth and fact BOGGS PAVING received these DBE designated contract funds, and STYX served mostly as a pass through entity to create the appearance of DBE participation.

29      Defendants BOGGS PAVING, DREW BOGGS, HICKS, MILLER, TUCKER, STYX, and CUTHBERTSON attempted to conceal the fact that the majority of the payments that were purportedly made to STYX were merely run through the STYX Nominee Account and funneled back to BOGGS GROUP by making various fraudulent pretenses and representations to make it appear that the payments had been made to STYX and that the work was eligible for DBE credit, including but not limited to:

        A.     Making false and misleading representations to SCDOT and NCDOT on DBE applications, renewal statements, certifications, etc.

        B.     Making false and misleading statements to SCDOT on quarterly DBE reporting forms.

        C.     Making false and misleading statements to NCDOT on electronic certifications.

        D.     Making false and misleading statements to SCDOT and NCDOT in contract bids.

        E.     Using the STYX Nominee Account to make it appear as though large amounts of funds were going to STYX when in actuality the majority of those funds were funneled back to BOGGS GROUP or paid to the non-DBE contractors who had actually performed the work.

        F.     Certifying that some funds had been paid to STYX when in reality those funds were neither paid to STYX nor were they run through the STYX Nominee Account.

        G.     Creating false invoices purportedly from STYX.

6

H.  Masking the BOGGS TRANSPORT logo on trucks by covering them with magnetic decals with the STYX logo to create the appearance that STYX was performing more hauling work on contracts than was true, and that STYX was supervising or controlling what were really BOGGS TRANSPORT trucks.

I.  Submitting bids that purported to be from STYX but were actually from BOGGS PAVING for NCDOT SBE projects.

30.  As a result of the defendants and their co-conspirators' fraudulent and deceptive conduct, USDOT, NCDOT, and SCDOT were deceived into awarding contracts to BOGGS PAVING, were deceived into paying BOGGS PAVING for projects that required DBE participation, and were deceived into crediting payments purportedly to STYX toward DBE participation goals when such payments were improper and such expenditures were not eligible for DBE credit under the DBE regulations, because:

A.  STYX had not actually received the payments.

B.  STYX had not performed a commercially useful function on the contracts.

C.  STYX had not been responsible for the management and supervision of the entire trucking operation for which he was supposedly responsible.

D.  STYX's role in the transactions had been limited to that of an extra participant through which funds were passed in order to obtain the appearance of DBE participation.

31.  From in or about June 2004 through the present, BOGGS PAVING was the prime contractor on 35 federally-funded contracts, and was a sub-contractor for two additional contracts, worth more than $87.6 million.  BOGGS PAVING lied to SCDOT, NCDOT, and other federal grant receiving entities that it had paid approximately $3.7 million on these contracts to STYX.  In truth and fact, BOGGS PAVING really only paid STYX about ten percent of the fabricated amount, or approximately $375,000.00, for actual work on those contracts.

32.  From in or about June 2004 through the present, BOGGS PAVING was the prime contractor on multiple state and local projects with NCDOT and SCDOT about which BOGGS PAVING lied that it made payments to STYX to fulfill a portion of the DBE or Minority Business Enterprise (MBE) goal.  In truth and fact, STYX received significantly less payments than the dollar amounts reported to NCDOT and SCDOT for those projects.

Examples of False Bids, Contracts, and DBE Reports to NCDOT or SCDOT

33.  For example, BOGGS PAVING used STYX's name to fraudulently obtain SCDOT Job 16.154B (Boggs Job 2926):

A.     On or about December 9, 2008, BOGGS PAVING submitted a bid proposal to SCDOT, signed by MILLER and stating that STYX would perform $39,921.50 in DBE services.

B.     After BOGGS PAVING won the contract, on or about October 21, 2009 and October 20, 2009 respectively, MILLER and CUTHBERTSON signed a bogus subcontract falsely stating that STYX would perform approximately $40,939.45 in hauling work.

C.     On or about May 26, 2010, BOGGS PAVING submitted a false DBE Quarterly Report Form and Trucker's Report to SCDOT, signed by a representative of BOGGS PAVING and by CUTHBERTSON, that lied that BOGGS PAVING had made total DBE payments to STYX of $55,845.94 for work provided by STYX during the fourth quarter of 2009 and first quarter of 2010.

D.     In reality, BOGGS PAVING had only paid STYX twelve percent of the certified amount, or $6,861.25. The remaining dollar value of hauling services had been provided by and was really paid to BOGGS TRANSPORT.

E.     To further the fiction and to deceive SCDOT, during the fourth quarter of 2009 and first quarter of 2010, BOGGS PAVING paid $48,984.69 to the STYX Nominee Account; the vast majority of these funds, $48,205.72 (98%), were funneled back to BOGGS TRANSPORT, who had actually done the work. Kickbacks of $778.97 were paid to STYX. Two examples of those illusory payments are set forth below.

i.     On or about October 19, 2009, BOGGS PAVING check #63174 to STYX for $64,338.22 was deposited into the STYX Nominee Account, which included payments purportedly for Job 16.154B, as well as for other jobs. On or about October 21, 2009, co-conspirators funneled over 98% of these funds back to BOGGS GROUP by writing STYX Nominee Account check #966 to BOGGS TRANSPORT for $63,351.37.

ii.     On or about November 2, 2009, BOGGS PAVING check #63516 to STYX for $48,019.67 was deposited into the STYX Nominee Account, which included payments purportedly for Job 16.154B, as well as for other jobs. On or about November 4, 2009, co-conspirators funneled over 98% of these funds to BOGGS GROUP by writing STYX Nominee Account check #971 to BOGGS TRANSPORT for $47,299.97.

34.     As another example, BOGGS PAVING used STYX's name to fraudulently obtain SCDOT Job 21.037053A (Boggs Job 2846):

A.     On or about April 22, 2008, BOGGS PAVING submitted a bid proposal to SCDOT, signed by MILLER and stating that STYX would perform $138,706.68 in DBE services.

B.     After BOGGS PAVING won the contract, on or about June 27, 2008, MILLER and CUTHBERTSON signed a bogus hauling agreement falsely stating that STYX would perform approximately $138,706.68 in hauling work.

C.   On or about April 10, 2009 and July 15, 2009, respectively, BOGGS PAVING submitted false DBE Quarterly Report Forms to SCDOT, signed by a representative of BOGGS PAVING and by CUTHBERTSON, that lied that BOGGS PAVING had made total DBE payments to STYX of $162,113.82 for work provided by STYX during the first and second quarters of 2009.

D.   In reality, BOGGS PAVING had only paid STYX seven percent of the certified amount, or $11,498.50. The remaining dollar value of services had been provided by and was really paid to BOGGS TRANSPORT.

E.   To further the fiction and to deceive SCDOT, during the first and second quarters of 2009, BOGGS PAVING paid $150,615.32 to the STYX Nominee Account; the vast majority of these funds, $148,225.66 (98%), were funneled back to BOGGS TRANSPORT, who had actually done the work. Kickbacks of $2,389.66 were paid to STYX. Two examples of those illusory payments are set forth below.

i.   On or about February 18, 2009, BOGGS PAVING check #53261 to STYX for $36,483.75 was deposited into the STYX Nominee Account, which included payments purportedly for Job 21.037053A, as well as for other jobs. On or about February 23, 2009, co-conspirators funneled over 98% of these funds to BOGGS GROUP by writing STYX Nominee Account check #899 to BOGGS TRANSPORT for $35,921.00.

ii.   On or about March 4, 2009, BOGGS PAVING check #53503 to STYX for $48,832.00 was deposited into the STYX Nominee Account, which included payments purportedly for Job 21.037053A, as well as for other jobs. On or about March 13, 2009, co-conspirators funneled over 98% of these funds to BOGGS GROUP by writing STYX Nominee Account check #905 to BOGGS TRANSPORT for $48,089.25.

35.   As another example, BOGGS PAVING used STYX's name to fraudulently obtain SCDOT Job 28.037932 (Boggs Job 2932):

A.   On or about January 13, 2009, BOGGS PAVING submitted a bid proposal to SCDOT that was signed by MILLER on behalf of BOGGS PAVING and stated that STYX would perform $163,053.32 in DBE services.

B.   After BOGGS PAVING won the contract, on or about February 26, 2009, MILLER and CUTHBERTSON signed a bogus hauling agreement falsely stating that STYX would perform approximately $163,053.32 in hauling work.

C.   On or about October 14, 2009 and January 15, 2010, respectively, BOGGS PAVING submitted false DBE Quarterly Report Forms for the third and fourth quarters of 2009 to SCDOT, signed by a representative of BOGGS PAVING and by CUTHBERTSON, that lied that BOGGS PAVING had made total DBE payments to STYX of $171,349.75 for work provided by STYX during the third and fourth quarters of 2009.

D.     In reality, STYX had received no money from BOGGS PAVING and performed no hauling services for the third and fourth quarters of 2009 for this job.  The entire dollar value for such hauling services had been provided by and was really paid to BOGGS TRANSPORT.

E.     To further the fiction and to deceive SCDOT, during the third and fourth quarters of 2009, BOGGS PAVING paid $171,349.75 to the STYX Nominee Account; the vast majority of these funds, or $168,730.00 (98%), were funneled back to BOGGS TRANSPORT, who had actually done the work.  Kickbacks of $2,619.75 were paid to STYX.  Two examples of those illusory payments are set forth below.

i.     On or about November 25, 2009, BOGGS PAVING check #63955 to STYX for $40,201.50 was deposited into the STYX Nominee Account, which included payments purportedly for Job 28.037932, as well as for other jobs.  On or about December 2, 2009, co-conspirators funneled over 98% of these funds back to BOGGS GROUP by writing STYX Nominee Account check #979 to BOGGS TRANSPORT for $39,561.00.

ii.     On or about December 11, 2009, BOGGS PAVING check #64337 to STYX for $29,543.00 was deposited into the STYX Nominee Account, which included payments purportedly for Job 28.037932, as well as for other jobs.  On or about December 16, 2009, co-conspirators funneled over 98% of those funds back to BOGGS GROUP by writing STYX Nominee Account check #982 to BOGGS TRANSPORT for $29,076.75.

36.     As another example, BOGGS PAVING used STYX's name to fraudulently obtain SCDOT Job 12.037946 & 20.037948 (Boggs Job 2941):

A.     On or about February 10, 2009, BOGGS PAVING submitted a bid proposal to SCDOT, signed by MILLER and stating that STYX would perform approximately $130,411.43 in DBE services.

B.     After BOGGS PAVING won the contract, on or about April 30, 2009 and May 5, 2009, respectively, MILLER and CUTHBERTSON signed a bogus hauling agreement falsely stating that STYX would perform approximately $130,411.43 in hauling work.

C.     On or about October 14, 2009 and January 15, 2010, respectively, BOGGS PAVING submitted false DBE Quarterly Report Forms for the third and fourth quarters of 2009 to SCDOT, signed by a representative of BOGGS PAVING and by CUTHBERTSON, that lied that BOGGS PAVING had made total DBE payments to STYX of $62,092.00 for work provided by STYX during the third and fourth quarters of 2009.

D.     In reality, STYX had received no money from BOGGS PAVING and performed no hauling services for the third and fourth quarters of 2009.  The entire dollar value for such hauling services had been provided by and was really paid to BOGGS TRANSPORT.

E.     To further the fiction and to deceive SCDOT, during the third and fourth quarters of 2009, BOGGS PAVING paid $62,092.00 to the STYX Nominee Account; the vast majority

10

of these funds, $61,089.50 (98%), were funneled back to BOGGS TRANSPORT, who had actually done the work. Kickbacks of $1,002.50 were paid to STYX. Two examples of those illusory payments are set forth below.

       i.     On or about September 18, 2009, BOGGS PAVING check #62581 to STYX for $51,345.90 was deposited into the STYX Nominee Account, which included payments purportedly for Job 12.037946, as well as for other jobs. On or about September 2, 2009, co-conspirators funneled over 98% of those funds back to BOGGS GROUP by writing STYX Nominee Account check #954 to BOGGS TRANSPORT for $50,539.24.

       ii.    On or about October 2, 2009, BOGGS PAVING check #62752 to STYX for $79,868.00 was deposited into the STYX Nominee Account, which included payments purportedly for Job 12.037946, as well as for other jobs. On or about October 8, 2009, co-conspirators funneled over 98% of these funds to BOGGS GROUP by writing STYX Nominee Account check #964 to BOGGS TRANSPORT for $78,619.75.

37.    BOGGS PAVING also used STYX's name to fraudulently claim DBE credit on SCDOT Jobs 43.037027A and 43.037032A (Boggs Jobs 2850 and 2851):

A.    On or about September 30, 2008, DREW BOGGS signed a subcontract with South Carolina company P.C. regarding hauling work to be performed on SCDOT Job 43.037027A. The subcontract contained a provision that: "All Hauling is to be performed for and invoiced to Styx Cuthbertson Trucking, Inc."

      B.    On or about September 30, 2008, DREW BOGGS signed another subcontract with P.C. regarding hauling work to be performed on SCDOT Job 43.037032A. The subcontract contained a provision that: "All Hauling is to be performed for and invoiced to Styx Cuthbertson Trucking, Inc."

C.    On or about April 10, 2009, general contractor A.C. from whom BOGGS PAVING was sub-contracting, submitted a false DBE Quarterly Report Form for Job 43.037027A for the first quarter of 2009 to SCDOT, signed by an employee of BOGGS PAVING and by CUTHBERTSON, that lied that A.C. had made total DBE payments to STYX of $34,655.05 for work provided by STYX during the fourth quarter of 2009 and the first quarter of 2009.

D.    On or about January 7, 2009, A.C. submitted a false DBE Quarterly Report Form for Job 43.037032A for the fourth quarter 2008 to SCDOT, signed by an employee of BOGGS PAVING and by CUTHBERTSON, that lied that A.C. had made total DBE payments to STYX of $73,898.36 for work provided by STYX during the fourth quarter of 2008.

E.    In reality, STYX had received no money and performed no hauling services on Job 43.037027A or Job 43.037032A. The entire dollar value for such hauling services, or other work attributed to STYX, had actually been paid to BOGGS TRANSPORT, BOGGS PAVING, or P.C.

11

F.    To further the fiction and to deceive SCDOT, between October 2008 and March 2009, BOGGS PAVING paid $34,655.05 to the STYX Nominee Account for Job 43.037027A; the vast majority of these funds, $22,853.00 (66%) and $10,945.05 (32%) respectively, were funneled to BOGGS TRANSPORT and BOGGS PAVING, who had actually done the work.   Kickbacks of $857.00 were paid to STYX.

G.    To further the fiction and to deceive SCDOT, between October 2008 and December 2008, BOGGS PAVING paid $73,898.36 to the STYX Nominee Account for Job 43.037032A; the vast majority of these funds, $10,079.75 (13%) and $62,404.89 (85%) respectively, were funneled to BOGGS TRANSPORT and P.C.   Kickbacks of $1,413.72 were paid to STYX.

38.   BOGGS PAVING also used STYX's name to fraudulently obtain SCDOT Job 3-45-0065-35 (Boggs Job 2431).

A.    On June 22, 2006, BOGGS PAVING mailed a "Statement of Minority Participation" to Talbert & Bright, Inc. regarding the Myrtle Beach International Airport – Taxiway J, Boggs Job 2431, falsely stating that STYX had been paid $98,809.50 for DBE work performed on the job

B.    In reality, STYX had received no money and performed no hauling services.

C.    To further the fiction and to deceive SCDOT, between April 21, 2006 and May 18, 2006, BOGGS PAVING paid $98,809.50 to the STYX Nominee Account; the majority of these funds were funneled back to BOGGS GROUP, with BOGGS PAVING receiving $76,000 (77%) and sub-contractor R.L. receiving $23,062.00 (23%).   STYX actually lost money for his "participation" on the project by supposedly receiving negative 252.50.

<u>Examples of NCDOT SBE Jobs obtained by BOGGS PAVING in STYX's name</u>

39.   BOGGS PAVING did not just use STYX to obtain construction contracts that required DBE credits.   On at least two occasions, BOGGS PAVING submitted bids for and ultimately was awarded NCDOT construction projects reserved for small business enterprises by bidding on the contracts in STYX's name.   In reality, STYX did no work on the contracts.   Rather, BOGGS PAVING and BOGGS GROUP entities actually did the work on the contracts and obtained all proceeds from the contracts.

40.   For example, BOGGS PAVING used STYX's name to fraudulently obtain NCDOT Job 10C.090110/10C.090112 (Boggs Job 3166) which was an SBE contract.

A.    In or about January 2011, at the direction of BOGGS PAVING, DREW BOGGS, and TUCKER, CUTHBERTSON submitted a bid package to NCDOT for NCDOT SBE Job 10C.090110/10C.090112, purportedly being made by STYX.   STYX was awarded the contract.   However, BOGGS PAVING performed the contract as if BOGGS PAVING were the prime contractor.

12

B.    On or about March 1, 2011, an employee of BOGGS PAVING sent an email to
TUCKER, various BOGGS PAVING employees, and the Boggs Lynches River Asphalt
Plant in Jefferson, South Carolina regarding how to charge stone on NCDOT SBE Job
10C.090110/10C.090112, specifically instructing the individuals to charge stone to STYX,
not to BOGGS PAVING.

C.    On or about May 9, 2011, CUTHBERTSON deposited a check from NCDOT for Job
10C.090110/10C.090112 totaling $60,244.64 and representing the proceeds from that job into
the STYX Nominee Account.

D.    In reality, STYX had done no work on Job 10C.090110/10C.090112, and
CUTHBERTSON funneled the total proceeds from the job to BOGGS GROUP entities. On
May 18, 2011, CUTHBERTSON wrote checks to AFFILIATE B for $50,916.80 and to BOGGS
PAVING for $9,327.84.

41.    As another example, BOGGS PAVING used STYX's name to fraudulently obtain
NCDOT Job 10C.090114/10C.090117 (Boggs Job 3194) which was an SBE contract.

A.    In or about June 2011, at the direction of TUCKER and MILLER, BOGGS PAVING
submitted a bid package for NCDOT Job 10C.090114/10C.090117, purportedly being made by
STYX.

B.    On or about June 11, 2011, an employee of AFFILIATE B sent an email to TUCKER and
MILLER stating the prices that should be used for the supposed STYX bid on NCDOT Job
10C.090114/10C.090117.

C.    On or about August 15, 2011, CUTHBERTSON deposited a check from NCDOT for Job
10C.090114/10C.090117 totaling $58,436.55 and representing the proceeds from that job into
the STYX Nominee Account.

D.    In reality, STYX had done no work on Job 10C.090114/10C.090117, and
CUTHBERTSON funneled the total proceeds from the job to BOGGS GROUP entities. On or
about September 23, 2011, CUTHBERTSON wrote checks to AFFILIATE B for $50,350.45 and
to BOGGS PAVING for $8,086.10.

## VI. Relationship between BOGGS PAVING and STYX

42.    Employees of BOGGS PAVING performed numerous clerical functions in STYX's
name, including: (1) creating quotes on STYX letterhead for construction contracts; (2) drafting
contracts between BOGGS PAVING and STYX for subcontract work purportedly to be
performed by STYX; (3) creating invoices for work supposedly done by STYX; and (4) giving
CUTHBERTSON pre-prepared documents, including quotes, contracts, and DBE reports, for his
signature.

43.    BOGGS PAVING and its management often treated STYX trucks as if they were
BOGGS TRANSPORT trucks. For example, STYX stored its trucks at the BOGGS Truck Yard,

and CUTHBERTSON spoke to the truck dispatcher for BOGGS TRANSPORT to determine where he was supposed to work on any given day.

## Count One
### (Conspiracy)

44.    Paragraphs 1 through 43 of this Indictment are realleged as if fully set forth herein.

45.    From in or about January 2003 and continuing through the date of this Indictment, in the Western District of North Carolina and elsewhere, the defendants,

(1) BOGGS PAVING, INC.
(2) DREW BOGGS
(3) KEVIN HICKS
(4) GREG MILLER
(5) GREG TUCKER
(6) STYX CUTHBERTSON TRUCKING
(7) JOHN CUTHBERTSON

and other persons and entities known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree together to:

A.    Defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental function of the USDOT in the implementation, execution, and administration of its DBE program through SCDOT and NCDOT.

B.    To commit offenses against the United States, that is Wire Fraud, in violation of Title 18, United States Code, Section 1343.

C.    To commit offenses against the United States, that is Mail Fraud, in violation of Title 18, United States Code, Section 1341.

OVERT ACTS

46.    In furtherance of the conspiracy and to accomplish its objectives, the following overt acts, among others, were committed by defendants and their co-conspirators in the Western District of North Carolina and elsewhere:

A.    The specific examples set out in paragraphs 33 through 41 of this Indictment are adopted as overt acts of the conspiracy.

B.    On December 9, 2008, NCDOT sent TUCKER a letter asking for additional documentation relative to $39,251.90 in MBE work that BOGGS PAVING claimed had been performed by STYX relative to NCDOT Job WBS # 42008 Browns Hill Church Road (SR1142) (Boggs Job 2848). On December 17, 2008, BOGGS PAVING and TUCKER sent a letter to NCDOT regarding MBE work done on Job WBS # 42008 Browns Hill Church

14

Road and provided a copy of checks and invoices purportedly related to the job; however, these checks were unrelated to this job and the invoices were fraudulent.

All in violation of Title 18, United States Code, Section 371.

## Counts 2 through 4
### (Wire Fraud)

47.     Paragraphs 1 through 43 of this Indictment are realleged as if fully set forth herein.

48.     On or about the dates specified below, in the Western District of North Carolina and elsewhere, the defendants,

(1) BOGGS PAVING, INC.
(2) DREW BOGGS
(3) KEVIN HICKS
(4) GREG MILLER
(5) STYX CUTHBERTSON TRUCKING
(6) JOHN CUTHBERTSON

aided and abetted by each other and others known and unknown, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing the scheme and artifice to defraud and to obtain money and property and attempting to do so, did, on or about the dates specified below, cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described in each count below, by submitting the following documents from Monroe, North Carolina to South Carolina:

| Count | Date | SCDOT Job Number | Document | Representation about DBE credit |
|-------|------|------------------|----------|----------------------------------|
| 2 | 12/09/2008 | 16.154B | Bid Proposal | Stating that STYX would perform $39,921.50 in DBE services on contract |
| 3 | 1/13/2009 | 28.037932 | Bid Proposal | Stating that STYX would perform $163,053.32 in DBE services on contract |
| 4 | 2/10/2009 | 12.037946 & 20.037948 | Bid Proposal | Stating that STYX would perform $130,411.43 in DBE services on contract |

All in violation of Title 18, United States Code, Sections 1343 and 2

15

49.     Paragraphs 1 through 43 of this Indictment are realleged as if fully set forth herein.

50.     On or about the dates specified below, in the Western District of North Carolina and elsewhere, the defendants,

(1)   BOGGS PAVING, INC.
(2)   DREW BOGGS
(3)   KEVIN HICKS
(4)   GREG MILLER
(5) STYX CUTHBERTSON TRUCKING
(6)   JOHN CUTHBERTSON

aided and abetted by each other and others known and unknown, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing the scheme and artifice to defraud and to obtain money and property and attempting to do so, did, on or about the dates specified below, caused to be sent and delivered by mail and private and commercial interstate carrier the following documents, as more particularly described in each count below, for the purposes of executing said schemes and artifices:

| Count | Date | SCDOT Job Number | Document | Representation about DBE credit |
|-------|------|------------------|----------|---------------------------------|
| 5 | 7/08/2009 | 16.154B | Subcontract | Stating that STYX would perform $40,939.45 in DBE services on contract |
| 6 | 5/26/2010 | 16.154B | DBE Quarterly Report | Stating that STYX had been paid $21,262.69 for DBE work performed on contract in fourth quarter 2009 |
| 7 | 5/26/2010 | 16.154B | DBE Quarterly Report | Stating that STYX had been paid $34,583.25 for DBE work performed in first quarter 2010 |
| 8 | 4/10/2009 | 21.037053A | DBE Quarterly Report | Stating that Styx had been paid $150,615.32 for DBE work performed in first quarter 2009 |
| 9 | 7/15/2009 | 21.037053A | DBE Quarterly Report | Stating that Styx had been paid $11,498.50 for DBE work performed in second quarter 2009 |
| 10 | 2/26/2009 | 28.037932 | Subcontract | Stating that STYX would perform $163,053.32 in DBE services on contract |

16

| 11 | 10/14/2009 | 28.037932 | DBE Quarterly Report | Stating that STYX had been paid $18,268.25 for DBE work performed in third quarter 2009 |
| 12 | 1/15/2010 | 28.037932 | DBE Quarterly Report | Stating that STYX had been paid $153,081.50 for DBE work performed in fourth quarter 2009 |
| 13 | 4/30/2009 | 12.037946 & 20.037948 | Subcontract | Stating that STYX would perform $130,411.43 in DBE services on contract |
| 14 | 10/14/2009 | 12.037946 & 20.037948 | DBE Quarterly Report | Stating that STYX had been paid $29,121.75 for DBE work performed in third quarter 2009 |
| 15 | 1/15/2010 | 12.037946 & 20.037948 | DBE Quarterly Report | Stating that STYX had been paid $32,970.25 for DBE work performed in fourth quarter 2009 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## Counts 16 through 18
### (Wire Fraud)

51.     Paragraphs 1 through 43 of this Indictment are realleged as if fully set forth herein.

52.     On or about the dates specified below, in the Western District of North Carolina and elsewhere, the defendants,

(1) BOGGS PAVING, INC.
(2) DREW BOGGS
(3) STYX CUTHBERTSON TRUCKING
(4) JOHN CUTHBERTSON

aided and abetted by each other and others known and unknown, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing the scheme and artifice to defraud and to obtain money and property and attempting to do so, did, on or about the dates specified below, cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described in each count below, by submitting the following documents from Monroe, North Carolina to South Carolina:

| Count | Date | SCDOT Job Number | Document | Representation about DBE credit |
|---|---|---|---|---|
| 16 | 1/07/2009 | 43.037027A | DBE Quarterly Report | Stating that STYX had been paid $23,210.00 for DBE work performed |

17

| 17 | 1/07/2009 | 43.037032A | DBE Quarterly Report | Stating that STYX had been paid $73,898.36 for DBE work performed |
| 18 | 4/10/2009 | 43.037027A | DBE Quarterly Report | Stating that STYX had been paid $11,445.05 for DBE work performed |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**Counts 19 through 20**
**(Wire Fraud)**

53.     Paragraphs 1 through 43 of this Indictment are realleged as if fully set forth herein.

54.  On or about the dates specified below, in the Western District of North Carolina and elsewhere, the defendants,

(1) BOGGS PAVING, INC.
(2) DREW BOGGS
(3) KEVIN HICKS
(4) GREG TUCKER
(5) GREG MILLER
(6) STYX CUTHBERTSON TRUCKING
(7) JOHN CUTHBERTSON

aided and abetted by each other and others known and unknown, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing the scheme and artifice to defraud and to obtain money and property and attempting to do so, did, on or about the dates specified below, cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more particularly described in each count below, by submitting the following documents between Monroe, North Carolina and Jefferson, South Carolina:

| Count | Date | Document | Content |
|---|---|---|---|
| 19 | 3/1/2011 | Email regarding NCDOT SBE Job 10C.090110/10C.090112 sent from W.M. at BOGGS PAVING to TUCKER, BOGGS PAVING's Lynches River Asphalt Plant in Jefferson, South Carolina, and other BOGGS PAVING EMPLOYEES | Specifically instructing the individuals to charge stone on the SBE job obtained by BOGGS PAVING in STYX's name to STYX not to BOGGS PAVING. |
| 20 | 6/11/2011 | Email regarding NCDOT SBE Job 10C.090114/10C.090117 sent from R.M. at Affiliate B Materials in Jefferson, South Carolina to TUCKER and MILLER | Stating that if STYX were going to bid on two Union county roads, he should use "$7.00 on the rock $5.15 haul on Avery Parker Road and $6.00 on Baucom Tarlton Road." |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## Count 21
### (Money Laundering Conspiracy)

55.     Paragraphs 1 through 43 of this Indictment are realleged as if fully set forth herein.

56.     From in or about January 2003 and continuing through the date of this Indictment, in the Western District of North Carolina and elsewhere, the defendants,

(1) BOGGS PAVING, INC.
(2) DREW BOGGS
(3) KEVIN HICKS
(4) GREG MILLER
(5) GREG TUCKER
(6) STYX CUTHBERTSON TRUCKING
(7) JOHN CUTHBERTSON

did knowingly, willfully and unlawfully combine, conspire, and agree together, and with other persons known and unknown to the Grand Jury to commit concealment money laundering, in violation of Tile 18, United States Code, Section 1956 (a)(1)(B)(i).

### Object of the Conspiracy

57.     It was a part and an object of the conspiracy that the defendants, and others known and unknown to the Grand Jury, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct financial transactions involving the proceeds of specified unlawful activity knowing that the transactions were designed in whole and in part to avoid, conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and knowing that, while conducting and attempting to conduct such financial transaction, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## Counts 22 to 29
### (Money Laundering)

58.     Paragraphs 1 through 43 of this Indictment are realleged as if fully set forth herein.

59.     On or about the dates set out below, within the Western District of North Carolina and elsewhere, the defendants,

(1)   BOGGS PAVING, INC.
(2)   DREW BOGGS

20

(3)  KEVIN HICKS
(4)  GREG MILLER
(5)  GREG TUCKER
(6) STYX CUTHBERTSON TRUCKING
(7)  JOHN CUTHBERTSON

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and commerce, that is the deposit of checks written to STYX, as described in the chart below, into the STYX Nominee Account, and then subsequent movement of the funds back to BOGGS GROUP by writing checks from the STYX Nominee Account to BOGGS TRANSPORT, as described in the chart below, which financial transactions involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343 and mail fraud, in violation of Title 18, United States Code, Section 1341, knowing that the transaction was designed in whole and in part to avoid, conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and knowing that, while conducting and attempting to conduct such financial transaction, the property represented the proceeds of unlawful activity, and did aid and abet in the same:

| Count | BOGGS PAVING Check Number | BOGGS PAVING Check Date | BOGGS PAVING Check Amount | Nominee STYX Check Number | Nominee STYX Check Date | Nominee STYX Check Amount |
|---|---|---|---|---|---|---|
| 22 | 53261 | 2/18/2009 | $36,483.75 | 899 | 2/23/09 | $35,921.00 |
| 23 | 53503 | 3/04/2009 | $48,832.00 | 905 | 3/13/09 | $48,089.25 |
| 24 | 62581 | 9/18/2009 | $51,345.90 | 954 | 9/25/09 | $50,539.24 |
| 25 | 62752 | 10/02/2009 | $79,868.00 | 964 | 10/08/09 | $78,619.75 |
| 26 | 63174 | 10/19/2009 | $64,338.22 | 966 | 10/21/09 | $63,351.37 |
| 27 | 63516 | 11/02/2009 | $48,019.67 | 971 | 11/04/09 | $47,299.97 |
| 28 | 63955 | 11/25/2009 | $40,201.50 | 979 | 12/02/09 | $39,561.00 |
| 29 | 64337 | 12/11/2009 | $29,543.00 | 982 | 12/16/09 | $29,076.75 |

All in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

## Notice of Forfeiture

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

      a.    All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment;

      b.    All property involved in such violations or traceable to property involved in such violations; and

      c.    If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

A TRUE BILL

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

JENNY GRUS SUGAR
ASSISTANT UNITED STATES ATTORNEY

22